NEWPORT NATIONAL BANK v. JOHN TWEED.

IF the President of a Bank individually agrees with a party on his application to borrow six hundred dollars for a year, and to know on what terms he can get it upon his promissory note for that amount indorsed by another person named to him, to let him have it at twelve per cent., and then directs him to draw a note to the order of such person for that amount payable in one year with the interest added, and get it indorsed by him, which is done and he then takes the note and gives him a cheek for five hundred and sixty-four dollars, or directs the cashier to enter that amount to his credit in the Bank, the contract will be usurious and the note void, and no action will lie upon it at the suit of the Bank against the indorser, although it has no knowledge of the transaction, except what the President alone possesses in regard to it.

ASSUMPSIT on a promissory note for $636, made April 6th 1868, by John L. Elliott to the order of John Tweed payable one year after date, and indorsed by him in blank on the back, with the words " Credit the Drawer" written across the face of it and signed by him. Elliott, the maker of it, applied to Franklin Q. Flinn, the President of the Bank, to borrow six hundred dollars for one year, and told him that Tweed would indorse his note for that amount to enable him to get the money, and inquired on what terms he could have it for that time. Flinn replied twelve per cent., and told him to draw the note as this was drawn, for six hundred dollars with the interest added to it for one year, which he did and took it to Tweed who indorsed it, and wrote and signed the words " credit the drawer" across the face of it ; and he afterward took it to Flinn at the bank and delivered it to him, who either gave him his check for $564, or told the cashier to place that amount to his credit in the Bank, he did not then recollect which, but that amount was placed to his credit in the Bank, and it was all he ever received upon the note. The amount of $564 was entered on his bank book by them at the Bank, but not as a discount. Flinn did not give him any decided answer when he first spoke to him for the loan, but when he told him that Tweed

would indorse his note for six hundred dollars, he said he could not let him have it at less than twelve per cent. The cashier testified that the first knowledge that he or the Bank had of the note was on or about the 25th of March 1869, some fifteen or twenty days before it matured, when Flinn, the President, handed him the note in the bank and asked him if he could have the $636 on it, as a temporary loan, and said it would fall due in a short time and would be paid at maturity.   He did so, took the note from him without requiring any indorsement of it by him, deposited it in the bank, and let him have $636 on it.   The note was not paid at maturity by the maker, and due notice of its protest for non-payment was served on the defendant.

*Harrington*, for the plaintiff.   The note was never discounted by the Bank, and admitting all that the maker of it had stated, but which he only admitted for the sake of argument, it was manifestly only a private loan made by Mr. Flinn individually out of his own money, and not a loan made by the Bank in any sense, or in any manner, either directly or indirectly ; for no director of it, and not even the cashier, had any knowledge of it, until about the time of its maturity, or a year after it had been made and given to Mr. Flinn, and he had advanced the money upon it by giving Elliott his own check on the Bank for the amount of it.   For such was the fact, and which he had not ventured positively to deny or misrepresent, although he could not, as he pretended, distinctly remember it when he was upon the stand as a witness. The Bank, therefore, as a *bona fide* holder of the note for full value paid for it, without any knowledge or notice whatever of the taint of usury since imputed to it by the maker, was entitled to recover, even, if the jury should be satisfied upon his testimony, that there was any foundation for the statement which he had made in regard to it.

*Whitely*, for the defendant.   In the case of *Cook v.*

*Pierce,* 2 *Houst.* 499, this Court held, and so instructed the jury, that a promissory note drawn as this was, with the "words credit the drawer," written across the face of it, imports and signifies to every one that such a note is an accommodation note drawn for the benefit and accommodation of the maker without any valuable consideration moving from, or any indebtedness on the part of the payee and indorser to the maker of it, and that when a third person takes a promissory note so made and indorsed from the maker of it, and advances him money upon it, it is equivalent to a direct loan of so much money by such third person to the maker of it, and if by such contract he exacts a higher premium than six per cent. upon the actual amount so loaned by him, it is usurious and void under the statute, and no action will lie for the recovery of it. It was, therefore, not a business note, and no action could have been maintained upon it by the maker against the payee of it, and there was nothing in it to bind the defendant as the payee and indorser of it, until after it had been discounted by another in a lawful and legitimate manner ; and consequently, as an obligation for the payment of it to any one, the party discounting it was the first and only person up to that time, and it was a *nudum pactum,* and no contract at all in law, until he became the owner and holder of it ; and accordingly, the first contract in law made through the instrumentality of it, was made with him. As the evidence clearly showed, it was made for the sole and express purpose of enabling Elliott, the maker, not only to raise money on it for his own accommodation, but to borrow of Franklin Q. Flinn, the President of the Bank, $564 for one year, on condition that he and Tweed would contract to pay interest at the rate of twelve per cent. upon that sum. Could there be any doubt that that constituted a direct loan of that amount of money by Flinn to Elliott, and at a usurious rate of interest ? It was no sale of the note to him, and if there is no sale, as Lord Mansfield remarked in a leading case on the sub-

ject, it must be a loan, and being a loan, the wit of man cannot rid it of the taint of usury.

If the Bank took it at any time afterward from Flinn with knowledge or notice of the usurious contract and terms on which he obtained it, then it was equally void in their hands, quite as much so as in his, and and for the same reason. But he was the President, the first and highest officer of the Bank, from the inception of the note which was made at his suggestion and by his directions, until the maturity and dishonor of it, and, of course, knew all about the transaction and the flagrant usury involved in it on his part, although he may have imagined, and even flattered himself that he had hit upon a very cunning device by the course which he adopted, to avert the taint and consequences of it both from himself and from the institution over which he was then presiding.    And his knowledge of it was notice to the Bank of it.

But the evidence warranted him in saying that it was not, and never was intended by him to be, in fact, a private transaction between him and Elliott, or a loan by him individually and on his own account merely.    On the contrary, it was secretly designed on his part from the first, to be a negotiation of the note on the terms and in the manner suggested by him, on account of and for the benefit of the Bank itself.    It was received by him during banking hours and at the banking house of the company, and when he formally handed it over to the cashier a few days before its maturity, it was received without his indorsement upon it, which would not have been done, if it was his own paper merely on which he wanted a temporary loan for his own private accommodation, without his indorsement, notwithstanding he was the President of the Bank.

He would, however, go further and say that if the note was void in his hand for usury, it was equally void for the same reason in the hands of the Bank, even, if the Bank had no knowledge or notice whatever of the usuri-

ous contract by virtue of which he became possessed of it. After he had closed his argument he handed to the court the following list of authorities. *Man v. Commission Co.*, 15 *Johns.* 44. *Purnell v. Waters*, 17 *Johns.* 176. *Knights v. Putnam*, 3 *Pick.* 184. *Nichols v. Fearson*, 7 *Pet.* 164. *Vanschaick v. Stafford*, 12 *Pick.* 565. *Duncan v. Bunker*, 7 *Met.* 8. *Powell v. Waters*, 8 *Conn.* 669. *Bossage v. Ross*, 29 *Barb.* 576. *Clark v. Sisson*, 4 *Duer* 408. *Clark v. Loom*, 5 *Duer* 468. *Williamson v. Storm*, 2 *Duer* 52. *Bock v. Laumar*, 24 *Penna.* 435. *Holmes v. Williams*, 10 *Paige* 326. *Sanrivein v. Brumer*, 1 *Harr. & Gill* 427. *Acly v. Ridgely*, 1 *Hill* 9. *Belden v. Lamb*, 17 *Conn.* 441. 2 *Pars. on Notes & Bills* 427. *Byles on Bills* 377. 3 *Kent's Com.* 80. *Bowyer v. Bampton*, *Str.* 1158. *Peacock v. Rhodes*, *Doug.* 636. *Lowe v. Waller*, *Doug.* 736. *Ackland v. Pearce*, 2 *Camp.* 399. *Hall v. Wilson*, 16 *Barb.* 548. *Unger v. Boas*, 13 *Penn.* 601.

*Harrington.* The jury could not consider that the taking of the note and the advancing of the money upon it by Mr. Flinn, was the act of the Bank, for even Elliott with all his readiness to swear to all he understood to be material and necessary to defeat the action, had not proved that it had been delivered by him to Mr. Flinn in the presence of any other person than themselves, whilst Mr. Watson, the cashier, had testified that the first time he ever saw it, and the first knowledge he had that there was such a note in existence, was not until nearly a year afterward, or some fifteen to twenty days before its maturity; and as the Bank, and not Mr. Flinn, was suing as the *bona fide* owner and holder of it for the full value on the face of it, after it had been indorsed and negotiated, Tweed the payee and indorser, as the indorser of it without any knowledge or notice of the corruption and usury since then for the first time alleged against it, in its inception a year before that time, it could constitute no legal defence, if all that had been alleged against it were true, to the present action. 2 *Greenl. Ev. sec.* 171.

*The Court, Gilpin, C. J.,* charged the jury, that Elliott, the maker of the note, was a competent witness in the case, and if the jury were satisfied from all the evidence in it, that before the note in question was made he applied to Franklin Q. Flinn to borrow six hundred dollars for a year, and to know on what terms he could obtain it from him upon his note with John Tweed as the indorser of it, and that Flinn told him he could have it at twelve per cent. and directed him to draw the note for six hundred dollars with the interest for one year added to it, (and which, of course, imported lawful interest, or interest at the rate of six per cent.) payable to the order of Tweed, and to sign it himself as maker, and get Tweed to indorse it as the payee of it, and then take it to him for that purpose ; and were also satisfied from the evidence that that was done, and that the promissory note in question and now before them, was then prepared and signed by Elliott the maker, and indorsed by Tweed the payee, pursuant to such direction, and that the words " credit the drawer " were then written across its face and signed by the latter, and that Elliott himself afterward took it to Flinn and delivered it to him and received for it five hundred and sixty-four dollars from him, either by his check, or by his direction to the cashier to enter that amount to Eliott's credit in the Bank, then it was direct and complete and conclusive proof that Flinn knew when he so took it, that it was an accommodation note for the sole and exclusive benefit of Elliott, the maker of it, and that no consideration had passed from him to Tweed for it, and that it was a direct loan by him of that amount of money to Elliott for one year from the date of the note, on the security of it, and it would at the same time also be conclusive proof that it was a loan of that amount of money at an unlawful and usurious rate of interest ; and it is, therefore, void under our statute, as was distinctly and expressly ruled by this court in the case of *Cook v. Pierce,* 2 *Houst.* 499. It was not a purchase of the note by Flinn, if such were the facts of the case, but a loan direct

of that amount of money to Elliott on the security of the note and the indorsement of it by Tweed ; and in no case where there is a lending of money in which the person lending it, either directly or indirectly, takes or contracts for the loan or use of it at a higher rate of interest than six per cent, *per annum*,can the wit of man devise a plan to cover and conceal it, that the Court would not unkennel and expose the usury of it,and enforce the statute against it.   In regard to the question of liability as between subsequent indorsers of it, if there had been any, or as between Flinn and the Bank, the court is not called on to say any thing, or to express any opinion, as that question is not involved in this case.

The main defence, however, had been that if such were the facts in the case, still the Bank which took it and gave full value for it, and is the plaintiff in the action and is the party now suing upon it, is entitled to recover because it had not been proved, as is alleged, that the bank itself, or its directors had any knowledge or notice whatever of the usurious character and terms of the contract between Flinn and Elliott in pursuance of which the note was made and given by the one and accepted and received by the other, and which did not appear on the note itself, when it came into the possession of the Bank,and knew nothing of its existence even, until nearly a year afterward.   But how can that be, and how does that allegation accord with the fact, that Flinn himself was the President of the Bank, received it at the Bank, and deposited it himself in the Bank a short time before its maturity, and drew the money out of the Bank upon it ?   It never was before the directors, never was discounted by them, and so far as the evidence goes, none of them up to that time had ever seen it, or knew any thing about it.   Nevertheless, we find it in the possession of the Bank and the Bank, claiming to be the lawful owner and holder of it, and is now in court suing upon it.   According to the testimony of the cashier it was placed there by the President of the Bank, and he by

his request paid him the money on it. Such corporations can only act by and through the agency of their officers, and in all transactions of an officer and agent of a corporation, such as the President was of this Bank, done with the approbation of, or by the authority of his principal, notice to the agent is notice to the principal, and the knowledge of the agent is the knowledge of the principal, for no principle of law is better settled.